26971. PLUMER *v.* SOUTHERN BELL TELEPHONE AND TELEGRAPH COMPANY.

Decided October 1, 1938. Rehearing denied November 3, 1938.

*J. T. Sisk,* for plaintiff. *Raymonde Stapleton,* for defendant.

Sutton, J. Albert Plumer brought suit for damages against John T. Rainey and the Southern Bell Telephone and Telegraph Company. Subsequently Rainey died, and the plaintiff struck his name as a party defendant. The petition as amended alleged that on October 30, 1937, at about 4:30 or 5:00 o'clock in the afternoon, at the junction of Heard and Thomas Streets in the City of Elberton, an automobile truck of the defendant, then and there

driven and operated by John T. Rainey, was driven into and against the side of an automobile in which the plaintiff was seated; that the automobile truck was the property of the defendant, and at said time and place was being driven and operated by Rainey in the prosecution of the business of the defendant; that the plaintiff was driving his automobile southward along Thomas Street crossing Heard Street, and his front wheels had reached a point at the intersection approximately opposite the curb of Heard Street, and well on the right-hand side of Thomas Street, when Rainey drove the truck of the defendant against and into the left-hand side of plaintiff's automobile, striking it about and on the front door; that in the operation of the truck Rainey was not looking in the direction in which he was driving; that he cut, drove, and propelled the truck sharply to the left of the signal-light at the intersection of said streets and into plaintiff's automobile; that immediately after the impact of the truck with plaintiff's automobile Rainey alighted from the truck and began to curse and abuse plaintiff because of the said collision and the consequent damage to the truck of defendant; that he became enraged at plaintiff because of the collision of the two motor vehicles and the damage done to the truck of the defendant; that the truck operated by Rainey was the regular equipment and service truck of the defendant used in the construction, maintenance, and servicing of its telephone system in the City of Elberton; that Rainey was attired in his work clothes; that the collision occurred at a time of day during his regular work hours for the defendant and about 100 yards from the office and plant of the defendant, to which Rainey drove the truck after the collision; that among the duties of Rainey, as servant and employee of the defendant, was that of operating the truck and protecting the same from injury or damage; that he became enraged at the damage done to the truck by the impact of the two vehicles; that the assault upon plaintiff grew immediately out of the performance of Rainey's duties in the operation and protection from damage of the defendant's truck; that all of the acts of Rainey were within the scope of his employment, and the assault was made and committed in the prosecution of the business of the defendant; that at the time of the assault there was no personal relation of any kind between plaintiff and Rainey, and no kind of personal quarrel, difficulty, ill will, or difference, but the anger of Rainey and the

consequent assault by him upon plaintiff grew solely and exclusively out of the collision of the two motor vehicles; that after accosting plaintiff Rainey reached into the truck and secured a chisel, screw-driver, or long instrument of some kind, and beat plaintiff upon his left hand and jabbed or stabbed him in the left eye with the point of the said instrument; that the assault was unjustified, wanton, wilful, unprovoked, and deliberate; that by reason of the beating inflicted by Rainey on the plaintiff's hand he was caused great mental and physical pain and suffering for several days; that the wound inflicted on his left eye cut a gash in his face and penetrated his eyeball, causing him intense pain and suffering; and that the scar left on the eyeball has had the effect of preventing plaintiff from moving said eyeball to the right, and has greatly impaired his vision.

The defendant filed a general demurrer on the ground that the petition set forth no cause of action against it; and after the petition was amended the demurrer was renewed. The court sustained the demurrer and dismissed the action; and the exception is to that judgment.

While a corporation is liable for a tort committed by its servant in the prosecution and within the scope of its business, whether the act be wilful or negligent, we think that under the allegations of the petition in the present case it is plainly shown that the servant stepped aside from his employment to gratify his own resentment and anger, that his conduct was at the time in no way connected with the business of his master, and that the court properly sustained the general demurrer and dismissed the action. The petition makes general allegations that the servant was driving the master's truck in the prosecution of its business and in the scope of the business, and that among his duties was that of operating the truck and protecting it from injury or damage. It sets out specifically that immediately after the impact of the two motor vehicles the servant became enraged at plaintiff because of the collison and damage to the truck, that he alighted from the truck and began to curse and abuse plaintiff because of the collision and consequent damage to the truck, then procured a screw-driver or some other iron instrument from the truck, and with it assaulted and beat plaintiff in certain described particulars which resulted in his injury and damage. It is argued by counsel for the plaintiff that

the servant was prosecuting his master's business and acting in the scope of his employment in seeing about the damage to the truck and talking to plaintiff about it. The petition, however, does not show that there was any investigation or discussion as to any damage or any effort to adjust any damage. Nor does it allege that the servant was authorized by the master to deal with the plaintiff in that respect. His alleged duty was to drive the truck and *prevent* damage. Here the damage had been done when the servant alighted from the truck. There was nothing showing an intention on the part of the plaintiff to further damage the truck. The incident of damage was at an end. So in spite of the general allegations as to the servant, at the time of the assault, being engaged on business for the master, they are negatived by the specific allegations of facts, which show that the servant was pursuing a matter wholly personal to himself, the gratification of his resentment and anger because of the collision and damage done to the truck before he alighted. "'It is the general rule that the allegations of a petition will, when attacked by appropriate demurrer, be construed most strongly against the pleader. So, where general allegations . . are followed by specific detailed averments, the former ordinarily will yield to the latter.' *McClure Ten Cent Co.* v. *Humphries,* 29 *Ga. App.* 524 (116 S. E. 54), and cases cited. While it is true that a general averment alleging in effect that the act of the servant was done in the prosecution of the master's business and within the scope of the servant's authority has been held to state traversable facts rather than a mere conclusion of law (*Savannah Electric Co.* v. *McCants,* 130 *Ga.* 741 (2), 61 S. E. 713), yet when, as in the instant case, a general averment of this nature is amplified by specific allegations which plainly and distinctly negative as a fact the general charge that the acts complained of were in the prosecution of the master's business and within the scope of the agent's authority, the specific averments will prevail." *Daniel* v. *Excelsior Auto Co.,* 31 *Ga. App.* 621, 624 (121 S. E. 692). See also *Ogletree* v. *MacDougald Construction Co.,* 45 *Ga. App.* 128 (163 S. E. 320).

There is a marked difference between an act done for the purpose of avoiding damage to property, and an act done for the purpose of wreaking vengeance on one who has caused damage to property. It is true that the petition alleges that the assault upon the

plaintiff grew immediately out of the performance of the servant's duties in the operation and protection of the truck from damage; but that allegation is overborne by the specific facts alleged, which show that what was done was not to protect the truck or to prevent damage to it, because the damage had been completed, and no allegation is made that any further damage was impending or threatened. The specific facts alleged show merely that the servant was giving vent to passions which had been aroused by the collision and damage which had occurred before he alighted from the truck. The rule is stated in 39 C. J. 1307, § 1506: "If the assault was committed by the servant, not as a means or for the purpose of performing the work he was employed to do, but in a spirit of vindictiveness or to gratify personal animosity, or to carry out an independent purpose of his own, then the master is not liable." It was recognized in *Georgia Railroad Co.* v. *Wood*, 94 *Ga.* 124, 126 (21 S. E. 288), where a brakeman of the defendant railway threw a stone at and injured a boy who had just previously attempted to swing to or climb upon its train, but had desisted from the attempted trespass: "If the brakeman, while these boys were engaged in the trespass, had, in attempting to prevent the trespass or cause them to desist, injured one of them through negligence or carelessness or by using more force than was necessary for the purpose, the company would perhaps be liable. . . But after the boy had desisted, the company would not be responsible for an injury inflicted on him by the brakeman in attempting to punish him for the trespass." And in the recent case of *Heath* v. *Atlanta Beer Distributing Co.*, 56 *Ga. App.* 494 (193 S. E. 73), it was held that a corporation was not liable for the death of a bystander killed by the sole stockholder and owner of the corporation in the course of firing at another person with the intent to kill him because of hatred and desire for revenge for a fancied theft of liquor from the corporation, which liquor had previously been recovered; inasmuch as the acts of the tort-feasor were not to protect the property of the corporation or to prevent trespassing or in the furtherance of its business or within the scope of the sole owner's employment. Other cases might be cited to illustrate this principle of law.

This is not a case where the conduct of the servant was resorted to for the purpose of executing any business for the master, and

where the master might be liable whether the means adopted were appropriate or not. It is an instance where the servant stepped aside from the master's business to serve his own personal ends, and where, though the servant may be liable, the master is not. See *Savannah Electric Co.* v. *Hodges,* 6 *Ga. App.* 470 (65 S. E. 322); *Greeson* v. *Bailey,* 167 *Ga.* 638 (146 S. E. 490); *Henderson* v. *Nolting First Mortgage Cor.,* 184 *Ga.* 724, 733 (193 S. E. 347). Nor is the fact that the servant was attired in his working clothes evidential of the fact, as contended by counsel for the plaintiff, that at the time of the assault he was on the master's business and in the scope of his employment. Being so equipped is not equivalent to serving the master, where the act merely represented the personal revenge of the servant for damage already done before the assault was made, and where no further damage was imminent or threatened. Nor do the facts that the truck was the regular service truck used in the construction, maintenance, and servicing of the defendant's telephone system in Elberton, that it was being operated by the servant, that the collision occurred during his working hours, and that the truck was driven by him, after the collision, to the office and plant of the defendant, about one hundred yards from the scene of the collision, affect the case. "The test is not that the act of the servant was done during the *existence* [italics ours] of the employment,—that is to say, during the time covered by the employment,—but whether it was done in the prosecution of the master's business; whether the servant was *at that time* engaged in serving his master, for, if the servant steps aside from his master's business, for however short a time, to do an act not connected with such business, the relation of master and servant is for the time suspended, and the servant alone is responsible for his act committed by him during this period." *L. & N. Railroad Co.* v. *Hudson,* 10 *Ga. App.* 169, 172 (73 S. E. 30). The question whether or not at the time of the commission of the tort the servant was acting in the prosecution of his master's business and within the scope of his employment is ordinarily one for determination by the jury; but where, under the allegations of the petition, no reasonable construction can be drawn except that the servant was engaged solely in a private enterprise of his own, the question must be decided by the court as a matter of law. The cases cited by the plaintiff have been carefully considered, but none requires a

ruling different from that we here make, that the court did not err in sustaining the demurrer and dismissing the action.

*Judgment affirmed. Felton, J., concurs. Stephens, P. J., dissents.*