**JOHNSON v. M. J. ULINE CO., Inc.**

**No. 229.**

Municipal Court of Appeals for the District of Columbia.

Dec. 27, 1944.

Rehearing Denied Jan. 9, 1945.

James A. Cobb, of Washington, D. C. (Cobb, Howard & Hayes, of Washington, D. C., on the brief), for appellant.

Walter M. Bastian and Peter N. Chumbris, both of Washington, D. C., for appellee.

Before CAYTON and HOOD, Associate Judges, and BARSE, Chief Judge, the Municipal Court for the District of Columbia.

HOOD, Associate Judge.

This is an appeal from an order granting a motion to dismiss a complaint. In the complaint appellant alleged that: "While he was accompanying one of his trucks which was being driven by one Wilson Summers, one Frank Davis who was driving a truck belonging to the defendant corporation, M. J. Uline Company, Incorporated, recklessly and negligently drove into the truck belonging to this plaintiff. Plaintiff's driver Summers called the driver Davis' attention to his reckless and careless driving, which the said Davis resented and forthwith attempted to assault Summers. This plaintiff, whose truck Summers was driving, sought to keep Davis from striking his driver Summers, at which time Davis, while in the employ of the defendant corporation and in the course of his business, set upon and assaulted this plaintiff."

The complaint sought damages solely on account of the assault and was not concerned with any damage that may have resulted to the truck by reason of the collision. Motion to dismiss was on the ground that the complaint did not state a cause of action.

Appellant argues that the allegation that the assault was committed by the employee "while in the employ of the defendant corporation and in the course of his business" in itself is sufficient to state a cause of action. It is unnecessary for us to decide this contention because the complaint sets forth the specific facts of the occurrence, and we cannot ignore these specific allegations of fact. The general al-

legations must be considered as circumscribed by the more specific statements. Plumer v. Southern Bell Telephone & Telegraph Co., infra.

Municipal Court rule 2, sec. 8, in effect at the time of the filing of the complaint and the hearing of the motion, required that the complaint be similar in form to that required by the Rules of Civil Procedure for the District Courts of the United States. Rule 8 (a) of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, requires that an original claim contain a short and plain statement of the claim showing that the pleader is entitled to relief, and Rule 12 (b) provides that a motion to dismiss a complaint may be made on the ground of "failure to state a claim upon which relief can be granted." Do the facts alleged in the complaint show that appellant was entitled to relief? The question of the liability of an employer for the tortious acts of an employee has been considered on many occasions by many courts. We think that the decided cases in this jurisdiction furnish the guide for our decision.

A leading case here is that of Axman v. Washington Gaslight Company, 38 App. D.C. 150. The plaintiff there sought damages for an assault and battery claimed to have been committed upon her by agents of the defendant. The court, after considering many cases on the subject, said:

"In the light of these adjudications, we conceive the true test in measuring the principal's responsibility, to be whether the act of the agent was done in the prosecution of the business either impliedly or expressly intrusted to the agent by the principal. If it was, the principal is responsible for the manner in which the agent executed his commission, even if he acted wantonly, recklessly, or against orders. He represented his principal, and what he did was for the benefit of his principal. If his recklessness or lack of judgment caused loss or damage, it is only just that the one who selected and commissioned him should be held accountable therefor. Of course, the moment the agent turns aside from the business of the principal and commits an independent trespass, the principal is not liable. The agent is not then acting within the scope of his authority in the business of the principal, but in the furtherance of his own ends."

Three recent cases illustrate the application of the general principles there laid down. In Grimes v. B. F. Saul Co., Inc., 60 App.D.C. 47, 47 F.2d 409, 410, an employee of a real estate company entered one of the apartment houses managed by the company and made an assault, with intent to rape, upon the plaintiff, whose husband was employed by the company as a janitor at the building. The trial court sustained a demurrer to the declaration and this action was affirmed on appeal, the court saying:

"It was an independent trespass of the agent, utterly without relation to the service which he was employed to render for the defendant. In such case the employer is not liable."

In Dilli et al. v. Johnson, 71 App.D.C. 139, 140, 107 F.2d 669, 670, a patron of a restaurant made complaint about food to the employee in charge and as a result the employee assaulted the patron. A judgment in favor of the patron against the proprietors of the restaurant was affirmed, the court saying:

"With this evidence before it, the jury was justified in finding that the servant, whose duty it was to serve defendants' patrons and to adjust any disputes or differences with the customer, was acting within the scope of his employment when he resented the complaint by violently attacking the plaintiff. (Citations) In this view, it cannot be contended that, in serving the food and receiving the complaint, the agent was not promoting the object of his employment. With just as little reason, can it be said that he broke the connection between master and servant when he allowed his own resentment and anger to lead to an assault on the customer. A line of separation so vague as this would emphasize the shadow rather than the substance."

In Park Transfer Company v. Lumbermens Mutual Casualty Co., U.S.App.D.C., 142 F.2d 100, a quarrel arose between two workmen employed by different contractors in the construction of a building. The quarrel arose over one employee drinking water from a pail which belonged to the employees of the other company. As a result of the quarrel the employee of the Park Transfer Company struck and killed the employee of the other company. The insurance company, which paid workmen's compensation to the widow of the deceased employee, brought suit against the employer of the striking employee. In holding that a motion for a directed ver-

dict should have been granted the court said:

"A principal is not liable for his agent's tort unless it is 'within the scope of the agent's employment.' It is not within the scope of the employment if it is done for the agent's purposes only. Unless an assault, or other tort, is actuated in part at least by a purpose to serve a principal, the principal is not liable."

Assuming that appellant has stated the facts in the light most favorable to him, and drawing from those facts all reasonable inferences in his favor, would the facts alleged support a finding that appellee's employee, in making the assault upon appellant, was acting in the prosecution of business impliedly or expressly entrusted to him by appellee? The complaint clearly alleges that the attempted assault on appellant's driver was due to appellee's driver resenting the former's remarks as to his manner of driving and just as plainly that the assault was committed upon appellant when he attempted to intervene. Appellee's driver while operating the truck was in the furtherance of his master's business, but when the collision had occurred and the two drivers engaged in an argument as to which was at fault, appellee's driver to some degree was departing from his employment. When the argument reached the stage that appellee's driver became personally resentful of the remarks of the other driver and then attempted to assault him, we think he completely departed from his master's business. When appellant intervened and appellee's driver shifted his resentment to appellant, and successfully assaulted him, it is clear that he was in nowise actuated by a purpose to serve his principal but was engaged in a purely personal encounter.

The instant case is plainly distinguishable from the Dilli case. There a customer made a complaint to the employee in charge whose duties included that of dealing with complaints. The employee sought to adjust the complaint with a night stick. This was not a proper method of adjusting complaints but nevertheless it was the method adopted by the employee to whom the matter had been entrusted. Here there is no allegation that appellee's driver was employed to settle damage claims. Claims growing out of automobile collisions are highly controversial and are not customarily handled by truck drivers at the scene of collision or elsewhere. It is so highly improbable and abnormal for a truck driver to be vested with any such authority that inference of existence of the authority would not be warranted.

However, even if such authority were alleged, we think the complaint plainly shows that the driver had no thought of settling any claim against his master when he attempted to assault appellant's driver, and that he was actuated entirely by personal resentment at the remarks of the other driver. In so doing the driver "turns aside from the business of the principal and commits an independent trespass." Axman v. Washington Gas Light Co., supra.

Imputation of liability under the doctrine of respondeat superior became completely remote, and the connection between master and servant was unmistakably non-existent, when the driver turned further aside from his master's business to commit an assault upon appellant.

A case closely in point is that of Plumer v. Southern Bell Telephone & Telegraph Co., 58 Ga.App. 622, 199 S.E. 353, 356. There plaintiff alleged that the driver of defendant's truck negligently collided with his automobile, and that the employee became enraged at the damage resulting to the truck and made an assault upon plaintiff. In affirming an order sustaining a demurrer to the complaint, the court said:

"There is a marked difference between an act done for the purpose of avoiding damage to property and an act done for the purpose of wreaking vengeance on one who has caused damage to property. It is true that the petition alleges that the assault upon the plaintiff grew immediately out of the performance of the servant's duties in the operation and protection of the truck from damage, but that allegation is overborne by the specific facts alleged which show that what was done was not to protect the truck or to prevent damage to it, because the damage had been completed, and no allegation is made that any further damage was impending or threatened. The specific facts alleged show merely that the servant was giving vent to passions which had been aroused by the collision and damage which had occurred before he alighted from the truck. * * *

"This is not a case where the conduct of the servant was resorted to for the purpose of executing any business for the master and where the master might be liable whether the means adopted were appropri-

ate or not. It is an instance where the servant stepped aside from the master's business to serve his own personal ends, and where, though the servant may be liable, the master is not. * * *

"The question of whether or not the servant was at the time of the commission of the tort acting in the prosecution of his master's business and within the scope of his employment is ordinarily one for determination by the jury; but where, as here, under the allegations of the petition, no reasonable construction can be drawn except that the servant was engaged solely in a private enterprise of his own the question must be decided by the court as a matter of law."

In other cases involving facts similar to the present case the authorities have reached the same conclusion.*

■ Appellant complains that the order sustaining the motion to dismiss did not allow him opportunity to amend, but appellant made no application to the trial court for leave to amend, and, in view of Code section 13—301, we cannot assume that he would have been denied the right of amendment had he sought it.

Affirmed.

CAYTON, Associate Judge (dissenting).

In voicing my dissent I do not stress the substantive question involved, though there is ample basis for arguing that the majority opinion is wrong in its reasoning and in its conclusion that the allegations of the complaint do not make out a case of agency. A number of well-considered cases have taken a broader and more realistic approach in testing the facts for proof, or lack of proof, of agency. Davis v. Merrill, 133 Va. 69, 112 S.E. 628; New Ellerslie Fishing Club v. Stewart, 123 Ky. 8, 93 S.W. 598, 9 L.R.A.,N.S., 475; Richberger v. American Express Co., 73 Miss. 161, 18 So. 922, 31 L.R.A. 390, 55 Am.St.Rep. 522. And no local decision points to a different result.

I think the appeal should be decided not on the substantive question but as a matter of pleading, for it was on the pleadings that the case was decided below and on the pleadings it is brought here for review. Nor should it be decided on the basis of the rigid rules of common law pleading or upon the reasoning of such cases as Plumer v. Southern Bell Telephone & Telegraph Co., 199 S.E. 353, 355, cited by the majority, where the Georgia Court made the surprising statement that "* * * the allegations of a petition will, when attacked by appropriate demurrer, be construed most strongly against the pleader." I thought we had reached too advanced a stage in legal procedure to accept that sort of guide. I thought there was general acceptance of the rule announced in the federal cases: that the complaint should be liberally construed in favor of the pleader and in a "light most favorable to plaintiff, and with every intendment regarded in his favor." Tahir Erk v. Glenn L. Martin Co., 4 Cir., 116 F.2d 865, 869; Pliner v. Nesvig, D.C., 42 F. Supp. 297; Cohen v. United States, 8 Cir., 129 F.2d 733; Continental Collieries, Inc. v. Shober, 3 Cir., 130 F.2d 631; United States v. Thurston County, D.C., 54 F.Supp. 201; Publicity Building Realty Corporation v. Hannegan, 8 Cir., 139 F.2d 583; Tyler Fixture Corporation v. Dun & Bradstreet, Inc., U.S.D.C.W.D.Mich., 3 F.R.D. 258. It was this rule of construction which prompted Sanborn, Circuit Judge, speaking for the Eighth Circuit, to say:[1]

"* * * there is no justification for dismissing a complaint for insufficiency of statement, except where it appears to a certainty that the plaintiff would be entitled to no relief under any state of facts which could be proved in support of the claim."

Nor have I found any cases under the Federal Rules which hold as the majority holds here, that "the general allegations must be considered as circumscribed by the more specific statements." I think the case is made out by the allegation of employ-

---

* Georgia Power Co. v. Shipp, 195 Ga. 446, 24 S.E.2d 764; Plotkin v. Northland Transportation Co., 204 Minn. 422, 283 N.W. 758; State ex rel. Gosselin v. Trimble, 328 Mo. 760, 41 S.W.2d 801. See, also, Restatement, Agency, section 235, wherein the comment says: "The act is within the scope of employment only if the servant is actuated to some extent by an intent to serve his master;" and section 245 wherein it is said in il-

lustration eight: "A is employed as a truck driver for P. While so employed he gets into an altercation with T, a rival truck driver, over precedence at a crossing. Having acquired precedence, A then leaves his truck and assaults T. Upon these facts alone, the act of A is not within the scope of employment."

[1] Leimer v. State Mut. Life Assur. Co., 8 Cir., 108 F.2d 302, 306.

ment and agency and that as here employed the other matter should properly be regarded as mere surplusage and not as allegations fatal to a recovery. I think there is no doubt that if plaintiff had merely alleged that the driver while in the employ of the defendant and in the course of its business, assaulted the plaintiff, his complaint would have successfully withstood the motion to dismiss; because it would have conformed to the forms of complaint set out in the Appendix to the Federal Rules, and uniformly followed in thousands of cases. But, according to the majority, because he said more than he needed to, he said too much and pleaded himself out of court. Such a ruling does violence to Federal Rule 8(f) which says: "All pleadings shall be so construed as to do substantial justice." [2] More, it does violence to the spirit and philosophy of the new rules, designed as they are to assure a trial on the merits whenever possible. It forgets that "perfection in pleading is rare" and that "prolixity is a besetting sin of most pleaders." [3]

.That is one of the reasons motions to dismiss have not been as frequently or successfully employed as the old demurrer. It is probably the reason too, for the uniform holding that "no matter how improbable it may be that the plaintiff can establish the allegations of his complaint [he] is, nevertheless, entitled to the opportunity to make the attempt." [4]

This plaintiff might by his evidence have been able to prove a convincing case of agency. He might for example, prove specific authority, or estoppel, or ratification, or other special circumstances pointing to liability. On the other hand it may be that he would lose his case at the hands of a jury; it may even be that he would, for lack of evidence, not be able to get to the jury. But we cannot, by merely reading his complaint, say that defeat must be his inevitable fate and that the coup de grace was therefore properly administered at the inception of the struggle.

---

[2] New Municipal Court Rule 8(f).

[3] Securities & Exchange Commission v. Timetrust, Inc., 9 Cir., 28 F.Supp. 34.

[4] Louisiana etc., Union, Inc. v. Great Atlantic & Pacific Tea Co., 8 Cir., 131 F.2d 419, and cases there cited.